UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON KIMBALL,

    Plaintiff,      Civil Action No. 17-12659
v.      HON. LAURIE J. MICHELSON
    U.S. District Judge
    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL      U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sharon Kimball ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed the present application for Disability Insurance Benefits ("DIB") on January 6, 2015, alleging disability as of September 2, 2014[1] (Tr. 159-165). After the initial denial of the claim, she requested an administrative hearing, held on March 15, 2016 in Detroit, Michigan (Tr. 32). Administrative Law Judge ("ALJ") Joy Turner presided. Plaintiff, represented by attorney Samantha Ball, testified (Tr. 36-62), as did Vocational Expert ("VE") Harry Cynowa (Tr. 62-66). On April 22, 2016, ALJ Turner found that Plaintiff was not disabled (Tr. 14-28). On June 19, 2017, the Appeals Council denied review. Plaintiff filed for judicial review of the final decision in this Court on August 14, 2017.

## BACKGROUND FACTS

Plaintiff, born August 23, 1962, was 53 when ALJ Turner issued her decision (Tr. 28, 159). She received an Associate's Degree and worked for a title company between April, 2013 and September, 2014 (Tr. 200). She also worked previously as a home health care aide, office assistant, and sub-secretary (Tr. 199-200). Her application for benefits alleges disability as a result of diabetes, neuropathy, severe shoulder pain, degenerative disc disease of the lumbar spine, hypertension, and nerve pain of the right shoulder, arm, and left foot (Tr. 198).

---

[1]Following an administrative hearing, an earlier application for DIB was denied for the period between September 4, 2009 through March 15, 2011 (Tr. 71-79).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She was right-handed, stood 5' 8" and weighed 250 pounds (Tr. 36). In the months preceding the hearing she lost 20 pounds (Tr. 37). She lived with her adult son (Tr. 37). She drove about three times a week (Tr. 37-38). She obtained an Associate's Degree in 1994 in an administrative assistant program (Tr. 38). She also obtained a certification from Michigan Rehabilitation Services (Tr. 39). Her job as a Certified Processing Specialist ("CPS") for a title company required her to work at a computer but did not require any lifting (Tr. 40). She was laid off from her job in September, 2014 because of her inability to make her quotas due to upper extremity neuropathy (Tr. 40). From 2001 to 2009, she worked for the City of Detroit as both a receptionist and office assistant (Tr. 41). The receptionist position required her to lift and carry up to 15 pounds and the office assistant position required her to lift/carry up to 20 (Tr. 44-45). Since September, 2014, her work activity was limited to part-time work (Tr. 40).

Plaintiff was unable to work full-time for multiple reasons (Tr. 46). She experienced sleep disturbances which prevented her from sleeping more than four hours a night (Tr. 46). She also had diabetes, degenerative osteoarthritis of the lumbar spine, and arthritis of the right knee (Tr. 46). On a scale of one to ten, her worst back pain was a "nine" and on an average day "five," with or without medication (Tr. 46-47). She typically experienced level "six" knee pain (Tr. 47). She also experienced level "six" right shoulder pain due to

tendonitis and left foot and right hand numbness (Tr. 48-49). She took prescribed medication for diabetes, hypertension, and hyperlipidemia (Tr. 51). She wore compression stockings and took prescribed pain medication (Tr. 51-52). She experienced the side effect of drowsiness and loss of appetite from the pain medication (Tr. 54).

Plaintiff was unable to sit for more than one hour or stand for 15 minutes before requiring a position change (Tr. 54). She was unable to walk more than two blocks due to low back and hip pain (Tr. 54). She was unable to lift more than five pounds (Tr. 54). She experienced occasional urinary incontinence (Tr. 55).

On a typical day, she would first make coffee, eat breakfast, then check her phone messages (Tr. 56). She spent the morning checking her email and reading on her smart phone (Tr. 57). Her household chores were limited to preparing simple meals and doing dishes (Tr. 57-58). She performed laundry chores with the help of her son (Tr. 58). She relied on her son to help her with household chores and grocery shopping, noting that while he had a learning disability, he did not have physical limitations (Tr. 58-59). At the time of the hearing, she was able to care for her personal needs but relied on others to "do" her toenails and fingernails (Tr. 59-60). She went to church once a week for a free meal but did not attend services (Tr. 60). She seldom shopped at a mall due to limitations in walking (Tr. 60). On a "bad day," Plaintiff lacked the motivation to get out of bed, shower, or get dressed (Tr. 60-61). She suffered "somewhat" from depression but did not take antidepressive medication and had not sought treatment (Tr. 60-62).

**B.    Medical Evidence**[2]

### 1. Records Related to Plaintiff's Treatment

January, 2013 records by Sofia Syed, M.D. state that Plaintiff did not experience secondary diabetes symptoms despite high glucose levels (Tr. 284). August, 2013 treating records by Byron Wolfing, M.D. note Plaintiff's report of glucose levels as high as 190 (Tr. 249). Plaintiff sought treatment for a toe wound (Tr. 252). A physical examination was otherwise normal (Tr. 251). She reported taking only Metformin for the condition of diabetes (Tr. 249).

March, 2014 chiropractic records note x-rays showing "very slight" degenerative osteoarthritis at C5-C6 (Tr. 343). She received traction therapy for the back condition (Tr. 345). Following a May, 2014 car accident, Plaintiff received emergency treatment for knee pain, and "mild" head, and neck pain (Tr. 255, 257). Hospital records note no loss off consciousness and that the "rear-end" accident did not result in a broken windshield or airbag deployment (Tr. 257). Plaintiff was ambulatory at the scene of the accident (Tr. 257). CTs of the head and neck were unremarkable for injury (Tr. 259, 263-264). A review of symptoms was otherwise negative (Tr. 258). Imaging studies of the right knee showed only degenerative changes (Tr. 264). Plaintiff reported that she felt "much better" upon discharge (Tr. 259).

---

[2]Records predating the September, 2014 alleged onset of disability are included for background purposes only.

In August, 2014, Jeffrey F. Parker, M.D. precluded Plaintiff from all household chores for one month (Tr. 280). The same month, Plaintiff received counseling in diabetic self-care (Tr. 358-361). Treatment records show a normal range of motion (Tr. 362). An MRI from the following month was negative for a right rotator cuff tear or atrophy (Tr. 277). The following month, nerve conduction studies showed "severe peripheral neuropathy . . . consistent with a history of long-standing diabetes" (Tr. 274, 351). Dr. Parker recommended four weeks of physical therapy to address Plaintiff's complaints of shoulder pain (Tr. 272). He noted that despite the absence of a rotator cuff tear, Plaintiff experienced tendinitis (Tr. 266). Plaintiff reported good results from the physical therapy (Tr. 266). Physical therapy records state that Plaintiff denied shoulder pain one month after beginning physical therapy (Tr. 299, 320). The following month, Plaintiff stated that she wished to discontinue physical therapy because she felt "much improved" (Tr. 265, 334). October, 2014 therapy records state that Plaintiff had no pain with daily activities except for difficulty hooking her bra (Tr. 338). Dr. Syed's notes from October, 2014 state that Plaintiff did not experience secondary symptoms of diabetes despite continued high glucose levels (Tr. 282). Dr. Syed noted that Plaintiff was non-compliant with diabetes treatment (Tr. 283).

In February, 2015, Dr. Syed noted that urine tests showed protein consistent with uncontrolled diabetes (Tr. 287). In May, 2015, Plaintiff sought treatment for heart palpitations (Tr. 365). A review of systems and range of motion and imaging studies were unremarkable (Tr. 366, 403). She was diagnosed with supraventricular tachycardia ("SVT")

(Tr. 370). The following month, Dr. Syed opined that the episode was attributable to Plaintiff's excess consumption of soft drinks (Tr. 370). Upon physical examination, a review of symptoms was unremarkable (Tr. 370). She advised Plaintiff to perform back strengthening exercises (Tr. 372). Treating records note that as of the end of April, 2015, Plaintiff was "extremely concerned" about a possible pregnancy (Tr. 408). Ophthalmological records from the same month note mild diabetic retinopathy and a cataract of the right eye (Tr. 408). In July, 2015, Plaintiff reported that she was exercising one day a week for up to 45 minutes at a time (Tr. 378). She was advised to use a ski/step machine, cycle, and treadmill for exercises (Tr. 378). Treating records from July, 2015 note that Plaintiff was advised to follow a strict diet as early as 2009 but had failed to follow through (Tr. 380, 413). Plaintiff reported low back pain but denied "tingling, numbness, [or] headaches" (Tr. 416). She demonstrated full strength in the lower extremities with a normal gait (Tr. 417). She was advised to undergo physical therapy for low back and core strengthening in addition to epidural injections (Tr. 418). An x-ray of the lumbar spine showed mild degenerative disc disease at L4-L5 and L5-S1 (Tr. 419-420, 427-428). Pain management records from the same month also note Plaintiff's denial of tingling or numbness (Tr. 424). Plaintiff was scheduled for an epidural injection and physical therapy and was prescribed Naprosyn and Robaxin (Tr. 426). The following month, Plaintiff admitted that she had not engaged in meal planning because she was looking for a new job (Tr. 383-384).

### 2. Non-Treating Records

On March 31, 2015, B.D. Choi, M.D. performed a non-examining assessment of Plaintiff's work-related physical abilities on behalf of the SSA (Tr. 84-92). He found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 89). He found that Plaintiff was limited to occasional postural activity but did not experience further non-exertional limitations (Tr. 90).

**C. Vocational Expert**

VE Harry Cynowa classified Plaintiff's past relevant work as a processing specialist as skilled and exertionally sedentary; reception clerk, semiskilled/sedentary; and administrative clerk, semiskilled/light [3] (Tr. 62). He stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 63). The ALJ (in conformance with the March 15, 2011 previous finding of non-disability) asked the VE to consider that the former work as an administrative clerk position was performed at the medium exertional level (Tr. 63 *citing* 71-79). The ALJ then described the following

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

hypothetical individual to the VE, using Plaintiff's age, education, and work background:

> [A]ssume this individual is limited to light work, except she would occasionally climb ramps and stairs, ladders, ropes and scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl. She would be limited to frequent reaching with her right upper extremity. No limits to the left. Can that individual perform any past work? (Tr. 64).

The VE testified that the restrictions would allow for Plaintiff's past relevant work as an administrative clerk as the position was generally performed in the national economy, as well as the work of a processing specialist as performed by Plaintiff and as generally performed in the national economy (Tr. 64). The VE testified further that the hypothetical restrictions would also allow for the unskilled, light work of an information clerk (greater than 250,000 positions in the national economy); lobby attendant (100,000); and hand packager (250,000) (Tr. 64). The VE found that if the above-described individual were limited to sedentary work with a limitation to "frequent handling, fingering, and feeling bilaterally," the past relevant work as a processing specialist could be performed (Tr. 65). The VE then found that if the same individual were also limited to "simple routine tasks" at the sedentary level, none of the past work could be performed (Tr. 65). The VE concluded his testimony by stating that an individual who was off task at least 20 percent of the time and absent at least three days of the month due to physical impairments would be unable to perform any competitive full-time employment (Tr. 65). He stated that his testimony was consistent with the information found in the *DOT*, but noted that his testimony regarding being off task and absenteeism (unaddressed in the *DOT*) was based on his own professional

experience (Tr. 65-66).

### D. The ALJ's Decision

The ALJ noted that "absent new and additional evidence of change in condition or changed circumstances," she was bound by the Residual Functional Capacity found in the March 15, 2011 non-disability opinion (Tr. 14)(*citing Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)). Then, citing the medical transcript, ALJ Turner found that although Plaintiff experienced the severe impairments of "sprains and strains; essential hypertension; diabetes mellitus, and obesity," none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17).

The ALJ determined that Plaintiff retained the RFC for exertionally light work with the following limitations:

> [Occasionally . . . climb ramps and stirs, ladders, ropes, and scaffolds; occasionally . . . balance, stoop, kneel, crouch, and crawl; and frequently . . . perform reaching with the right upper extremity, with no limits on the left (Tr. 18).

Citing the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as an administrative clerk as the job is generally performed in the national economy and as a processing specialist both as the job was generally and actually performed (Tr. 26, 64-65).

The ALJ found that the March 15, 2011 non-disability determination that Plaintiff was capable of only sedentary work was non-binding due to "new and material evidence that establishes change in [Plaintiff's] condition since the prior hearing" (Tr. 23). He noted that

at the time of the prior determination, Plaintiff was a "younger individual" but at the time of the current opinion was "an individual closely approaching advanced age" (Tr. 23). The ALJ cited March, 2014 imaging studies of the cervical and thoracic spine showing only "slight" abnormalities (Tr. 23). She acknowledged that an x-ray of the right knee showed degenerative changes and that the September, 2014 EMG/nerve conduction study of the upper extremities showed severe peripheral neuropathy "consistent with a history of diabetes" (Tr. 24). She cited October, 2014 records indicating that the right shoulder condition was resolved with physical therapy (Tr. 24). She cited July, 2015 findings of full motor strength of the lower extremities (Tr. 24). She noted that Plaintiff "was actively seeking employment as of August, 2015 (Tr. 25). She noted that while Plaintiff's receipt of unemployment benefits, contingent on the ability to work, was not dispositive of the non-disability claim, it undermined the allegations of physical limitation (Tr. 25). The ALJ noted that Plaintiff's ability to prepare meals, wash dishes, do laundry, drive, shop, and read on a regular basis also supported the finding that she was capable of a significant range of light work (Tr. 25). She noted that while Plaintiff testified to medication side effects, the treating records did not include any report of side effects (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Whether the ALJ Was Bound By The March 15, 2011 Determination

In her first argument, Plaintiff faults the conclusion that she could perform exertionally light work. *Plaintiff's Brief,* 7-9, *Docket #13,* Pg ID 478. Citing *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), she argues that ALJ Turner was bound to adopt the earlier March 15, 2011 determination by another ALJ limiting her to sedentary work. *Id.* (*citing* Tr. 75).

Acquiescence Ruling ("AR") 98-4(6), states that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact finder must adopt the previous RFC. AR 98-4(6), codifying *Drummond*, *supra,* provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings

affecting the finding or method for arriving at the finding.[4]

The facts in *Drummond* are similar to this case. In the first determination, claimant, 49, was denied benefits on the basis that she could perform sedentary work. *Id.,* 126 F.3d at 838. Under the "Grids," an individual limited to exertionally sedentary, unskilled work between the ages 50 to 55 ("closely approaching advanced age") directs a disability finding. 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. However, upon reapplying for benefits, claimant, past her 50th birthday, was found to be capable of exertionally medium work. *Id.* at 839. The Court found that "substantial evidence was not introduced that Drummond's condition improved significantly between the two hearing dates." *Id.* at 843. The Court held that "the ALJ was bound by the determination" that Drummond was limited to sedentary work. *Id.* Likewise here, the March 15, 2011 determination that Plaintiff was limited to unskilled, sedentary (work other than her past relevant work), if adopted, would direct a finding of disability given that Plaintiff was over 50 at the time of the more recent

---

[4]

Since ALJ Turner issued her determination, the Sixth Circuit has revisited *Drummond*, rejecting the interpretation that prior administrative findings have a preclusive effect on the newer period. *Earley v. Commissioner of Social Security*, 893 F.3d 929, 934 (6th Cir. 2018). The *Earley* Court held that the ALJ erred by finding that he was bound by the a previous determination without consideration of the evidence in support of disability submitted with a subsequent application for benefits for a later period. The Court held that the prior administrative findings were not entitled to preclusive effect, but rather, were "'an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.'" *Earley,* at 934 (*citing Albright v. Comm'r of Soc. Sec*., 174 F.3d 473, 478 (4th Cir. 1999)). Because here, ALJ Turner found that she was not bound by the previous RFC due to new and material evidence showing an improvement in Plaintiff's condition, the narrower interpretation of *Drummond* found in *Earley* does not change the present analysis.

determination.

However, in contrast to *Drummond,* the finding that Plaintiff's condition improved to the extent that she was capable of exertionally light work is well explained and supported. Plaintiff asserts that the ALJ "mentioned" the earlier decision on the first page of her determination "but provided no analysis" of how her condition improved since March 15, 2011. *Plaintiff's Brief* at 8 (*citing* Tr. 14). To the contrary, the ALJ went on to note that she had considered the March 15, 2011 findings in making her determination (Tr. 19). In providing a rationale for the light rather than sedentary RFC, ALJ Turner again acknowledged the sedentary RFC in the previous determination (Tr. 23), but noted that the finding was "not binding due to new and material evidence" establishing a change in Plaintiff's condition since the prior hearing (Tr. 23).

In support of the light RFC allowing for lifting 20 pounds occasionally and 10 frequently, the ALJ noted that while Plaintiff experienced some degree of limitation due to cervical and right shoulder sprain/strain, diabetes, right knee disorder, and lumbar spine disorder, the conditions did not preclude the performance of a range of light work (Tr. 23-24). The ALJ cited the imaging studies of the upper extremity showing only "slight" or "mild" abnormalities of the cervical and thoracic spine (Tr. 23-24). She noted that October, 2014 records showed a full range of cervical spine and shoulder motion (Tr. 24). As to the lower extremities, the ALJ noted that Plaintiff did not receive significant long-term treatment of the right knee condition between May, 2014 and July 21, 2015 (Tr. 24). She cited July,

2015 clinical studies showing no motor strength or muscle deficits of the lower extremity (Tr. 24). The ALJ acknowledged the September, 2014 EMG/nerve conduction showing severe peripheral neuropathy, but noted that upon examination, Plaintiff exhibited fine motor coordination and a normal gait (Tr. 24). The ALJ noted that Plaintiff was able to engage in a variety of regular activities including meal preparation, dishwashing, driving, shopping, and reading (Tr. 25).

My own review of the record is consistent with the ALJ's finding that Plaintiff's condition improved after March 15, 2011. Plaintiff's ability to perform substantial gainful employment between April, 2013 and September, 2014 undermines her claim that her condition has not improved since March 15, 2011 (Tr. 200). While Plaintiff alleges that peripheral neuropathy prevented her from working after September, 2014 (Tr. 40), her most significant upper extremity problems, precipitated by a May, 2014 car accident, appear to have resolved by October, 2014. Physical therapy records from September and October, 2014 note Plaintiff's report that the upper extremity problems were "much improved" and that her one remaining physical difficulty was hooking her bra (Tr. 265-266, 282, 338). July, 2015 records note that she did not experience extremity tingling or numbness (Tr. 424).

As to the lower extremity allegations, May, 2015 records show that Plaintiff was advised to exercise with the use of a step machine, cycle, and treadmill (Tr. 378). None of the treating records for the relevant period, showing good strength in the lower extremities and a normal gait, contradict the finding that Plaintiff was able to perform light work. As

noted above, at the time of the hearing, she admitted that she was able to perform part-time work (Tr. 40).

Accordingly, the ALJ did not err in finding that Plaintiff's condition improved since March 15, 2011 to the extent that she could perform a range of exertionally light work between September 2, 2014 and April 22, 2016.

### B. Peripheral Neuropathy

In her second argument, Plaintiff faults the ALJ for omitting the condition of peripheral neuropathy from the Step Two "severe" conditions.[5] *Plaintiff's Brief* at 9-12. Plaintiff acknowledges that the failure to include a condition causing more than minimal work-place limitations does not provide grounds for remand provided that the ALJ addresses limitations created by the condition at the later steps of the analysis. *Id.* (*citing Maziarz v. HHS*, 837 F.2d 240, 244 (6th Cir. 1987)). However, she contends that the ALJ failed to recognize that the condition of peripheral neuropathy supported her allegations of exertional limitations. *Id.* She argues that the diagnosis of peripheral neuropathy supports her claim that she is unable to stand for more than 15 minutes at a time and that she needs to take frequent breaks to sit down while doing housework. *Plaintiff's Brief* at 10.

This argument fails for a number of reasons. First, the September, 2014 studies showing severe peripheral neuropathy refer to the upper, not lower extremities (Tr. 20, 273-

---

[5]While Plaintiff alleges that the ALJ found that peripheral neuropathy was a "non-severe" impairment, in fact, the Step Two analysis does not include the term peripheral neuropathy at all. *Plaintiff's Brief* at 10; (Tr. 17).

276).  Plaintiff fails to show how the diagnosis of peripheral neuropathy of the *upper* extremities would affect her ability to stand or walk.  Second, while the ALJ did not include the condition of peripheral neuropathy in making her Step Two findings, she noted that the condition of diabetes mellitus was a severe impairment.[6]  The ALJ later acknowledged that the condition of peripheral neuropathy was "consistent with" Plaintiff's history of diabetes (Tr. 24), and elsewhere discussed the September, 2014 nerve conduction/EMG studies (Tr. 20).  Even assuming that the inclusion of diabetes at Step Two was insufficient acknowledgment of the condition of peripheral neuropathy, the discussion of the diabetic complication at subsequent steps of the analysis cures the arguable shortcoming.  *See Maziarz,* 837 F.2d at 244.

Third, Plaintiff does not dispute the RFC's upper extremity restrictions which are limited to a preclusion on repetitive overhead reaching on the right (Tr. 18).  Further, my own review of the transcript does not suggest that Plaintiff experienced a greater degree of upper extremity limitation than found in the RFC. Treating records from May and July, 2015 note that Plaintiff denied tingling or numbness (Tr. 416, 424).  Dr. Choi found that none of the treating records created before March, 2015 showed any degree of manipulative limitation (Tr. 90).  Because the ALJ's discussion and conclusions regarding peripheral neuropathy are well supported by the record, a remand on this basis is not warranted.

---

[6] Mayoclinic.org states that peripheral neuropathy is a common symptom of diabetes mellitus. https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061. (Last visited, August 6, 2018).

My recommendation should not be read to trivialize Plaintiff's past or current medical or personal problems. Nonetheless, the ALJ's determination that she was capable of unskilled light work based on the current record is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: August 7, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 7, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen